UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JON BRUST,     Plaintiff | ) ) ) | |
| v. | ) ) | CIVIL ACTION NO. 09-40191-FDS |
| FOX BROADCASTING COMPANY, LANGLEY PRODUCTIONS, INC., CITY OF WORCESTER, SERGEANT THOMAS NEEDHAM, CAMERAMAN DOE 1, CAMERAMAN DOE 2, OFFICER DOE 1, OFFICER DOE 2, OFFICER DOE 3,     Defendants | ) ) ) ) ) ) ) ) | |

**DEFENDANTS' MOTION IN LIMINE REQUESTING RULING OF LAW AS TO WHETHER SERGEANT THOMAS NEEDHAM IS ENTITLED TO QUALIFIED AND COMMON LAW IMMUNITY**

**I.   INTRODUCTION**

Defendants, Sergeant Thomas Needham (Sergeant Needham), and the City of Worcester (City) (collectively, Defendants), hereby move this Court to issue a ruling of law as to whether Sergeant Needham is entitled to immunity for the federal and state law claims raised against him. Plaintiff's Second Amended Complaint alleges that Sergeant Needham violated his constitutional rights pursuant to 42 U.S.C. § 1983 when he entered Plaintiff's apartment and allegedly pointed a gun at the Plaintiff on July 19, 2006. Plaintiff also advances corresponding state law claims for invasion of privacy, trespass and assault arising out of the alleged unconstitutional search and seizure. The Defendants asserted qualified immunity as an affirmative defense in their responsive pleading but did not address the issue at the summary judgment stage of litigation. Regardless, "defendants may raise a claim of qualified immunity at three distinct stages of the litigation"—in a motion to dismiss at the pleading stage, at summary judgment, and as an affirmative defense at trial. See Guzman-Rivera v. Rivera-Cruz, 98 F.3d 664, 667 (1st Cir.

1996).  In anticipation of the final pretrial conference which is scheduled in this matter on October 3, 2012, the Defendants seek to resolve this issue prior to trial by way of raising qualified immunity as an affirmative defense in the instant motion and were given leave to file this motion by August 1, 2012.  For the reasons that follow, the Defendants submit that Sergeant Needham is entitled to qualified immunity for the federal constitutional claim raised against him stemming from the alleged use of excessive force in violation of the Fourth Amendment,[1] as well as corresponding common law immunity for the state law claims of invasion of privacy, trespass and assault.

## II. ARGUMENT

### A. Sergeant Needham is Entitled to Qualified Immunity for the Alleged Violation of his Fourth Amendment Rights.

In the context of alleged constitutional violations, whether an officer is entitled to qualified immunity is determined by applying an objective standard.  Harlow v. Fitzgerald, 457 U.S. 800, 817-8 (1982).  "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Id. at 818.  This standard for qualified immunity for government officials is interpreted to include the actions of police officers, Malley v. Briggs, 475 U.S. 335, 343 (1986), and has been extended from actions brought under 42 U.S.C. § 1983 to actions brought pursuant to G. L. c. 12, § 11I.  See Duarte v. Healy, 405 Mass. 43, 47-48 (1989); Batchelder v. Allied Stores Corp., 393 Mass. 819, 822-23 (1985).  The inquiry on a motion brought by an official seeking qualified

---

[1] As noted by this Court in its Memorandum and Order on Defendants' Motion for Partial Summary Judgment, Document 62, pp. 9-10, the issue of whether the entry and search of Plaintiff's apartment, in and of itself and independent of the display of force, amounted to a constitutional deprivation was not addressed by the parties and, as a result, has been considered waived as independent theory of liability.  As such, the Defendants have focused the instant motion to concern only the alleged constitutional deprivation stemming from Sergeant Needham's alleged use of excessive force.

immunity is "whether a reasonable official could have believed his actions were lawful in light of clearly established law and the information the official possessed at the time of his allegedly unlawful conduct." McBride v. Taylor, 924 F.2d 386, 389 (1st. Cir. 1991). As this Court has noted, following Pearson v. Callahan, 555 U.S. 223 (2009), the First Circuit abandoned its former three-part qualified immunity analysis and adopted the two-part test articulated in Pearson. See Maldonado v. Fontanes, 568 F.3d 263, 269 (1st. Cir. 2009). Now, this Court must consider: 1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and 2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct. Id.

As to the second prong of the analysis, there are two aspects, the first focused "on the clarity of the law at the time of the alleged civil rights violation," id., and the second focused "more concretely on the facts of the particular case and whether a reasonable defendant would have understood that his conduct violated the plaintiff['s] constitutional rights." Id. "Cognizant of both the contours of the allegedly infringed right and the particular facts of the case, '[t]he relevant dispositive inquiry in determining whether a right is clearly established is *whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted*' . . . [and] whether [the defendant had] fair warning that his particular conduct was unconstitutional." Maldonado, 568 F.3d at 269 (citations omitted) (emphasis added). Under this inquiry, qualified immunity applies if "a reasonable officer could have believed [that the challenged conduct was] lawful, in light of clearly established law and the information the officer . . . possessed [at the time of the challenged conduct]," Aponte Matos v. Toledo Davila, 135 F.3d 182, 186 (1st Cir. 1998) (citations omitted), and it extends "so broadly that 'all but the plainly incompetent or those who knowingly violate the law' are covered." Hegarty v. Somerset

_____, 53 F.3d 1367, 1373 (1st Cir. 1995) (citations omitted); Messerschmidt v. Millender, 132 S. Ct. 1235, 1239 (2012) ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments…."). The protection of qualified immunity applies regardless of whether a government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact. See Pearson, 555 U.S. at 231.

Similarly, excessive force claims are judged against an "objective reasonableness" standard. See Graham v. Connor, 490 U.S. 386, 397 (1989). The reasonableness of the force used is determined by balancing the level of force used with the government's interest in public safety. Id. In this inquiry, the Court may consider all the facts relating to the case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." See Bastien v. Goddard, 279 F.3d 10, 14 (1st Cir. 1995). The government's interest is not judged with the benefit of hindsight; rather, it is "the perspective of a reasonable officer on the scene" at the time. Graham, 490 U.S. at 397. Additionally, an officer's subjective intent is not relevant to the "objective reasonableness" standard. See Bastien, 279 F.3d at 14 (citing Alexis v. McDonald's Rests., 67 F.3d 341, 352 (1st Cir. 1995)). "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." Graham, 490 U.S. at 397.

Under the emergency aid doctrine articulated by the First Circuit, "the police, in an emergency situation, may enter a residence without a warrant if they reasonably believe that swift action is required to safeguard life or prevent serious harm." United States v. Martin, 413 F.3d 139, 147 (1st Cir. 2005). To rely upon the doctrine, the government must show a

4

reasonable basis, approximating probable cause, both for the officers' belief than an emergency exists and for linking the perceived emergency with the area or place into which they propose to intrude. Id. "The requisite inquiry must be undertaken in light of the totality of the circumstances confronting the officers, including, in many cases, a need for an on-the-spot judgment based on incomplete information and sometimes ambiguous facts bearing upon the potential for serious consequences." Id.

Turning to the instant case, on July 19, 2006, Sergeant Needham arrived at 92 Houghton Street in Worcester shortly after Lieutenant Michael McKiernan's request for backup.[2] Lieutenant McKiernan had received a call regarding an armed home invasion and had reason to believe that the suspect, Devondre Cooper, who was known to live on the second floor of 92 Houghton Street, had fled into the building. While assisting with the surveillance of the building, Sergeant Needham observed an open window at the rear of the first floor apartment. Upon further investigation, the window was found to be off its track. Sergeant Needham banged on the exterior window frame in an attempt to get the attention of anyone inside the apartment, but to no avail. Based upon the circumstances, Sergeant Needham suspected that Cooper may have broken into the first floor apartment through the rear window and that a search of the apartment was required to determine the well-being of the first-floor occupant. As a result, Sergeant Needham entered the apartment with his gun drawn. However, upon entry into the bedroom of the first-floor apartment, Sergeant Needham discovered not Cooper but the Plaintiff—a person unknown to Sergeant Needham—lying on his back on his bed. According to the Plaintiff, Sergeant Needham pointed his firearm at the Plaintiff and said "freeze, don't

---

[2] Defendants, for the purposes of the instant motion, rely upon the Facts the Court previously accepted as true for purposes of summary judgment.

move." Plaintiff's constitutional claims stem from the alleged excessive force used by Sergeant Needham in pointing his gun at the Plaintiff.[3]

As a threshold matter, in light of this Court's Memorandum and Order on the Defendants' Partial Motion for Summary Judgment,[4] the Defendants concede that pointing a gun towards the Plaintiff may amount to a constitutional deprivation. However, Sergeant Needham is nonetheless immune from suit under the second prong of the qualified immunity analysis because a reasonable officer would not consider this conduct to be unlawful based upon the situation Sergeant Needham confronted—the continued pursuit of the suspect and his goal of protecting potential occupants from a suspected armed home invader—as well as the information that was available to him at the time. Sergeant Needham entered the first-floor apartment because he believed he was in hot pursuit of a suspect who was alleged to have just committed an armed robbery. When he entered the first-floor bedroom, Sergeant Needham found the Plaintiff—a person unknown to him at the time—on his bed. Without knowledge as to whether the Plaintiff was armed or dangerous, Sergeant Needham was forced to draw his weapon to secure not only his own safety but that of others as well, and Plaintiff's allegation that he instructed the Plaintiff to "freeze" could have been given in order to assist in this endeavor. Sergeant Needham did not "knowingly violate" the law and he was not "plainly incompetent" in opting to secure the premises for the safety of all involved. As discussed above, whether Sergeant Needham was mistaken in his belief that it was necessary to point his gun at the Plaintiff to secure the premises and to protect the officers does not preclude him from asserting a qualified immunity defense. See Pearson, 555 U.S. at 231. Based upon the information that was available to Sergeant Needham at the time—that an armed suspect was inside the building and

---

[3] See Footnote 1.

[4] See Document 62.

potentially inside the bedroom—no reasonable officer would consider Sergeant Needham's decision to draw his weapon to secure the area an unlawful action. As such, qualified immunity must attach to preclude Sergeant Needham from liability for the alleged Fourth Amendment violation raised against him based upon his decision to point his gun towards the Plaintiff.

    B.    <u>Sergeant Needham is Entitled to Common Law Immunity for the State Law Claims Raised Against Him</u>.

"Public officials are entitled to qualified immunity in the sense that they are not liable for negligence or other error in the making of a discretionary decision within the scope of their authority, so long as they act in good faith, without malice and without corruption." <u>Cachopa v. Town of Stoughton</u>, 72 Mass. App. Ct. 657, 665 (2008). This common law privilege is materially identical to the doctrine of qualified immunity, which Massachusetts courts long have recognized as a shield from liability for public officials alleged to have committed intentional torts in the course of discharging their official duties. <u>See</u> <u>South Boston Betterment Trust Corp. v. Boston Redevelopment Auth.</u>, 438 Mass. 57, 69 (2002) (applying common law immunity to claim for interference with contractual relations against mayor); <u>Duarte v. Healy</u>, 405 Mass. 43, 49-50 (applying common law immunity to statutory invasion of privacy claim against city officials); <u>EIC Dev., LLC</u>, 16 Mass.L.Rptr. 138, 2003 WL 1702531 at *15 (immunity analysis applied to tortious interference claim).

    Here, Sergeant Needham made the discretionary decision to enter Plaintiff's apartment in pursuit of the alleged armed home invader, and further made the discretionary decision to point his gun towards the Plaintiff to secure the premises and ensure the safety of all persons involved. Both of these decisions were enacted in good faith and based upon Sergeant Needham's reasonable assessment of the situation he confronted and the information that was available to him at the time. Moreover, Plaintiff's Second Amended Complaint does not contain any

allegations that suggest that Sergeant Needham acted with any malice or corruption. The absence of such malice or corruption, coupled with Sergeant Needham's good faith discretionary decisions, requires that Sergeant Needham receive common law immunity as a matter of law for the invasion of privacy, trespass, and assault claims raised against him.

### III.   CONCLUSION

WHEREFORE, the Defendants respectfully request that this Court find that Sergeant Needham is entitled to qualified immunity as a matter of law for the alleged Fourth Amendment excessive force constitutional claim raised against him, as well as to common law immunity for the invasion of privacy, trespass and assault claims.

CITY OF WORCESTER
SERGEANT THOMAS NEEDHAM

By their attorneys,
David M. Moore
City Solicitor


*/s/ Wendy L. Quinn*
Wendy L. Quinn (BBO#653954)
Assistant City Solicitor
City Hall, Room 301
455 Main Street
Worcester, MA  01608
(508) 799-1161
quinnwl@worcesterma.gov

## CERTIFICATE OF SERVICE

I, Wendy L. Quinn, hereby certify that, on this 30th day of July, 2012, the within Motion in Limine to Request Ruling of Law as to whether Sergeant Thomas Needham is Entitled to Qualified Immunity was served upon all counsel of record through this Court's electronic filing system as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants.

        */s/ Wendy L. Quinn*
        Wendy L. Quinn
        Assistant City Solicitor